IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

JIMMY L. DEAN,

    Plaintiff,

vs.                                                                      CASE NO. CV-08-J-1516-M

MICHAEL J. ASTRUE,
Commissioner of the Social
Security Administration,

    Defendant.

### MEMORANDUM OPINION

This matter is before the court on the record and the briefs of the parties. This court has jurisdiction pursuant to 42 U.S.C. § 405. The plaintiff seeks Supplemental Security Income due to two head injuries, a learning disability, hearing loss, social problems, and depression (R. 92). The plaintiff's alleged disability onset date is October 10, 1998 (R. 45).

On appeal, the plaintiff argues that the decision of the Administrative Law Judge (ALJ) that the plaintiff did not meet the requirements of listing 12.05(C), 20 C.F.R. § 404, Subpt. P, App. 1, is against the substantial weight of the evidence. Plaintiff's Brief at 4-5.

The court has considered the record and the briefs of the parties. For the reasons set forth herein, the decision of the Commissioner is **REVERSED**.

**Factual Background**

The plaintiff was born on January 28, 1976 (R. 89). He attended school through the seventh grade (R. 97). The plaintiff has past relevant work as a stock clerk, a fast-food worker, and a helper at Wal-Mart, all classified as light and unskilled jobs (R. 274).

Medical records show that the plaintiff received treatment for closed head trauma and a scalp laceration in May 1998 (R. 168). The plaintiff's injuries resulted from being attacked with a baseball bat. *Id.* Examinations of the cervical spine and skull showed no abnormalities (R. 169). In July 2004, the plaintiff underwent a psychological examination by Dr. Jon G. Rogers (R. 175). The plaintiff was evaluated for a mental disorder first in 1990 when he was fourteen years old. *Id.* Treatment was sought due to problems with learning to read, forgetting to finish tasks that he started, and depression. *Id.* He stated that the mental problems affected his work, and he was hospitalized on two occasions for his illness. *Id.* At the July 2004 evaluation, the plaintiff's Verbal I.Q. was 74, and his Performance I.Q. was 69 (R. 178). His Full Scale I.Q. was 69. *Id.* Dr. Rogers stated that the plaintiff "is able to function independently. The quality of his daily activities is below average." *Id.* Dr. Rogers' diagnoses included depressive disorder; mild mental retardation; headaches; psychosocial stress stemming from his difficulties in relationship to his occupational

problems; and a GAF score of 50. *Id.* Dr. Rogers then concluded that the plaintiff's "ability to understand, remember, and carry out instructions and respond appropriately to supervision, co-workers, and work pressures in a work setting would be severely impaired" (R. 180).

In July 2005, the plaintiff underwent another psychological evaluation, this time by Dr. Robert A. Storjohann (R. 196). His diagnoses included major depression, single episode, severe, without psychotic features, chronic; borderline intellectual functioning; schizoid personality disorder; history of two concussions, partial loss of hearing in right ear; occupational, educational, and economic problems, problems with access to health care services; and a GAF score of 55 (R. 198). Dr. Storjohann concluded that the plaintiff has "moderate deficits in his ability to understand, carry out, and remember instructions in a work setting. He appears to have moderate deficits in his ability to respond appropriately to supervision, co-workers, and work pressures in a work setting." *Id.* Dr. Norman Donald Chambers at Coosa Valley Family Practice also examined the plaintiff in July 2005 (R. 203). Dr. Chambers stated that the plaintiff's "significant limitations are related to his psychological status and he has many of the features of hyperactivity syndrome" (R. 205).

Dr. Rogers examined the plaintiff again in October 2006 (R. 225). The plaintiff's Verbal I.Q. was 70, and his Performance I.Q. was 69 (R. 228). His Full

Scale I.Q. was 67.  *Id.*  Dr. Rogers found it "doubtful" that the plaintiff is able to function independently (R. 230).  He stated that the plaintiff "was low functioning and obviously retarded.  He had very limited adaptive skills and low frustration tolerance." *Id.*  Dr. Rogers' diagnoses included depressive disorder, anxiety disorder; mild mental retardation; feelings of tension and panic; psychosocial stress stemming from his difficulties in relationship to his occupational problems; and a GAF score of 48.  *Id.*  Dr. Rogers also completed a supplemental questionnaire finding marked impairments in four categories, including: estimated impairment of ability to respond to customary work pressure; understand, carry out, and remember instructions in a work setting; perform simple tasks in a work setting; and perform repetitive tasks in a work setting (R. 231-32).  Susan Brunson, a licensed social worker, completed a narrative letter on January 2, 2007, stating that the plaintiff was seen for one visit in September 2006, and she determined that he was unable to work due to mental health issues (R. 233).

## Standard of Review

The court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining: 1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and 2) whether the correct legal standards were applied.  *See*

*Richardson v. Perales*, 402 U.S. 389, 390, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).  The Court may not decide facts, reweigh evidence, or substitute its judgment for that of the Commissioner. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). However, this limited scope does not render affirmance automatic,

> for 'despite [this] deferential standard for review of claims . . . [the] Court must scrutinize [the] record in its entirety to determine reasonableness of [the] decision reached." *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987).

*Lamb*, 847 F.2d at 701.  Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## Legal Analysis

In this case the ALJ determined that the plaintiff's mental impairments do not satisfy the criteria of listings 12.04, 12.05, or 12.06, 20 C.F.R. § 404, Subpt. P, App. 1 (R. 16).  Thereafter, the ALJ found that the plaintiff "has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: simple tasks with no production quotas, working mostly with objects and not people, and jobs that do not require reading" (R. 18).

The record does not support this decision.  The court finds that the ALJ did not properly consider the plaintiff's claim under the Listing of Impairments.  20 C.F.R.

§ 404, Subpt. P, App. 1, 12.05(C).  The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal."  *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

In reaching his determination that the plaintiff did not meet the criteria of listing 12.05(C), the ALJ stated that the plaintiff has IQ scores below 70, but "the record reflects a much higher level of intellectual functioning [than] that contemplated by the listing" (R. 17).  He also found that "[t]he record fails to reflect the deficits of adaptive behavior contemplated by the listing." *Id.*  The ALJ noted the plaintiff's one-year history at Fred's as an example of the plaintiff's ability to compete in independent and competitive employment that is "wholly inconsistent with the deficits of adaptive behavior contemplated by the listing" (R. 18).  This conclusion is in error as the plaintiff's medical records and work history provide otherwise.  Listing 12.05(C) states as follows:

> 12.05 *Mental Retardation:* Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
> 	The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

\* \* \* \*

> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
>
> * * * *

20 C.F.R. § 404, Subpt. P, App. 1. The plaintiff satisfies both criteria of this listing. First, the plaintiff's medical records demonstrate deficits in adaptive functioning that began as early as fourteen years old. The plaintiff was evaluated for a mental disorder in 1990, and he sought problems for his inability to read, forgetfulness, and depression (R. 175). He was hospitalized twice for his illnesses. *Id.* Secondly, the plaintiff satisfies the conditions of paragraph C. His Full Scale I.Q. was 69 in July 2004 (R. 178) and 67 in October 2006 (R. 228). Medical records show that the plaintiff's mental impairments significantly hamper his ability to work. Dr. Rogers found marked impairments in four categories relating to the plaintiff's ability to work (R. 231-32). Dr. Storjohann also found that the plaintiff would have difficulties in a work setting (R. 198). Both doctors concluded that the plaintiff suffers from depression, imposing significant work related limitations and functions. (R. 178, 230). Susan Brunson, a licensed social worker, also stated that the plaintiff was unable to work due to mental health issues (R. 233).

Additionally, the ALJ's finding that the plaintiff performed in a competitive work environment for one year is contrary to the record. The plaintiff worked at

Fred's for no longer than six months in 2002 (R. 68). He was fired from Fred's due to not performing his job according to his employer's requirements (R. 265-66). Further, the plaintiff has a very limited work history, as he has not held any job for longer than six months at a time (R. 99).

Based on the plaintiff's medical records and work history, the ALJ should have found that the plaintiff is disabled since his impairments satisfy the criteria of listing 12.05(C), 20 C.F.R. § 404, Subpt. P, App. 1. The ALJ's finding that the plaintiff is not disabled is against the substantial weight of the evidence. The court finds that because the plaintiff is disabled pursuant to listing 12.05(C), he is entitled to benefits as of his alleged onset date, October 10, 1998.

## Conclusion

"When evidence has been fully developed and unequivocally points to a specific finding, the reviewing court may enter the finding that the Secretary should have made." *Reyes v. Heckler*, 601 F.Supp. 34, 37 (S.D. Fla. 1984) (citing *Gardner v. Smith*, 368 F.2d 77, 86 (5th Cir. 1966); *DePaepe v. Richardson*, 464 F.2d 92 (5th Cir. 1972)). Because the plaintiff is entitled to a finding of disability under listing 12.05(C), it is hereby

**ORDERED** that the decision of the Commissioner is **REVERSED**. This case is **REMANDED** to the Agency to calculate the plaintiff's monetary benefits in

accordance with this Opinion.

**DONE** and **ORDERED** the 27th day of May, 2009.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE